**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUNAOFO TSUGITO TILEI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>T. WAN, et al.,<br><br>　　　　Defendants.<br>_____/ | 1:06-cv-00776-OWW-GSA-PC<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR ASSISTANCE FACILITATING COMMUNICATION WITH INMATE WITNESSES, WITH PREJUDICE<br>(Doc. 92.)<br><br>ORDER CLOSING DISCOVERY |

**I.    RELEVANT PROCEDURAL HISTORY**

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 and California law by Punaofo Tsugito Tilei ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis. This action is proceeding on Plaintiff's amended complaint, filed July 30, 2007, against defendants Wan, Gallagher, and Cooper ("Defendants") for retaliation in violation of the First Amendment, and for denial of due process in violation of the Fourteenth Amendment.[1]  (Doc. 16.)  The events at issue in this action occurred at the California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California, in 2005.

On September 10, 2009, and again on January 8, 2010, Plaintiff filed motions for court orders to communicate with his inmate witnesses. (Docs. 62, 76.) On January 22, 2010, the Court issued

---

[1] All other claims were dismissed from this action by the Court on July 8, 2008. (Doc. 26.)

1

an order denying Plaintiff's motions, without prejudice to renewal with a factual showing that the witnesses possess relevant knowledge, within forty-five days. (Doc. 89.) On March 1, 2010, Plaintiff renewed the motion, seeking a court order assisting with facilitation of communication with fifteen inmate witness. (Doc. 92.) On October 8, 2010, the Court issued an order requiring Defendants to file a response to Plaintiff's motion. (Doc. 106.) On November 24, 2010, Defendants filed a response to the motion. (Doc 110.) Plaintiff has not filed a reply.

## II.   PLAINTIFF'S ALLEGATIONS AND CLAIMS

In the amended complaint, Plaintiff claims that Defendants retaliated against him for his participation in legal activities, and violated his rights to due process, when they retained him in administrative segregation ("Ad-Seg") and transferred him to another prison. Plaintiff claims that the reason Defendants gave for placing him in Ad-Seg – that an anonymous source stated Plaintiff's life was possibly in danger from enemies – was false.

In their response to Plaintiff's motion for leave to correspond with inmate witnesses, Defendants summarize Plaintiff's allegations and their defense as follows:

> "Plaintiff alleges that he was placed in administrative segregation in retaliation for sending a complaint to the Ombudsman and Internal Affairs. Plaintiff's story is that he notified Defendant Wan that an inmate had been assaulted by an officer while the inmate was in the shower. Plaintiff claims that Defendant Wan was upset when he found out that Plaintiff had notified prison officials in CDCR headquarters about the alleged assault. Plaintiff claims that Defendant Wan showed him the confidential investigatory file and berated Plaintiff for going behind his back. Plaintiff claims that he was placed in administrative segregation, on the pretext that his safety was in danger if he remained in the general population. Plaintiff claims that his removal from general population and his later transfer to another prison was in retaliation for sending the complaint about the alleged assault to [the] CDCR Ombudsman and Internal Affairs. (First Amended Complaint, CR 16.)
>
> Defendants contend that there was a legitimate penological reason to remove Plaintiff from the general population, that the information came originally from an unsigned note, and when other information confirmed the threat, Plaintiff had to be transferred for his own safety. Prison officials have a constitutional duty to take measures they believe are appropriate to protect the safety of every prisoner in their custody. Farmer v. Brennen, 511 U.S. 825, 833 (1994)."

(Response to Motion, Doc. 110 at 3-4.)

///

///

1. **Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

With regard to transfer, prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976). However, prison officials may not "transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment rights . . . ." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). To establish a prima facie case, plaintiff must allege and show that defendants acted to retaliate for his exercise of a protected activity, and defendants' actions did not serve a legitimate penological purpose. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt, 65 F.3d at 807.

To succeed on his claim for retaliation, Plaintiff must prove that Defendants retained him in Ad-Seg, and/or transferred him to another facility, because of his participation in legal activities, and Defendants' actions did not advance a legitimate correctional goal.

2. **Due Process**

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Id. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff is entitled to very limited due process protections under federal law with respect to placement in Ad-Seg. See Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986). That

Defendants may have failed to comply with state regulations is not grounds for relief under section 1983 for deprivation of due process. Due process requires only that prison officials "hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated," that prison officials "inform the prisoner of the charges against [him] or the reasons for considering segregation," and that the prisoner be allowed "to present his views." Id.

To succeed on his claim for due process violations, Plaintiff must first prove that his retention in Ad-Seg imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life." Second, Plaintiff must prove he was not given a proper hearing before he was placed in Ad-Seg.

### III.    MOTION FOR LEAVE TO CORRESPOND WITH INMATE WITNESSES

Inmates may only correspond with one another if they obtain written authorization from the appropriate prison officials. Cal. Code Regs., tit. 15 § 3139 (2010). Further, the Court does not have jurisdiction in this action over anyone other than Plaintiff and Defendants, and cannot order that Plaintiff be allowed to correspond with his witnesses. E.g., City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757-58 (1982); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006).

Plaintiff requests a court order facilitating Plaintiff's communication with fifteen inmate witnesses, to enable him to undertake a legal investigation "in the manner that an attorney would." (Motion at 1.) Plaintiff submits evidence that he has made requests to prison officials to be allowed to contact witnesses, without success. In his motion, Plaintiff identifies each witness, describes his relationship with the witness, and discusses the knowledge possessed by the witness and how he believes it is relevant to Plaintiff's claims.

In their response, Defendants first argue that Plaintiff has not exhausted the procedures available to him at SVSP for approval of his correspondence requests. Plaintiff claims he sent a letter to his counselor, J. Guglielmo, but did not receive a response. (Motion, Doc. 92 at p. 3 of 18, ¶¶5-6.) Plaintiff also claims he then submitted a Request for Interview form to Guglielmo, and a letter to the Warden. (Id. at ¶¶6-7.) Plaintiff claims he received no response to any of his requests

4

and asserts that : "prison officials are not going to assist me in suing their comrads (*sic*)." (Motion, Id. at p. 3-4 of 18, ¶¶5-8.) Defendants submit evidence that Plaintiff's counselor, J. Guglielmo, never received a letter or Request for Interview form from Plaintiff. (Decl. of Guglielmo, Doc. 110, Exh. A at ¶1.) Defendants maintain that if Plaintiff did not receive a response, he should have submitted an administrative appeal. (Id. at ¶5.) Plaintiff attended a classification hearing on December 22, 2009 and was provided an opportunity to review his prison file, supervised by Guglielmo, but Plaintiff did not mention correspondence with other inmates to Guglielmo on either occasion. (Id. at ¶4; Exh. B.)

Defendants also argue that Plaintiff's motion should be denied because the claimed witnesses are cumulative or have information that is not relevant. The Court here lists each of Plaintiff's prospective witnesses and the testimony expected by Plaintiff, together with Defendants' responses.

### (1) Danny Torres, CDCR# P-02328[2]

Danny Torres ("Torres") was housed one cell below Plaintiff in Ad-Seg. Torres can testify that prison officials attempted to house Torres as Plaintiff's cell mate in Ad-Seg. Torres can also testify that inmates are ordinarily allowed to sign a document releasing officials from liability, allowing the inmate to return to a facility where problems for the inmate existed, and that inmates are usually given documentation of information by confidential informants against them. Plaintiff was not allowed either of these options.

Defendants argue that Torres' knowledge has no possible relevance to Plaintiff's case. Defendants contend that the fact that a decision was made that Plaintiff could safely be celled with one individual in Ad-Seg does not mean that Plaintiff's safety was not in danger in the general population. Defendants argue that the type of document allowing inmates to return to a problem facility is not a waiver of liability, and information about this document is irrelevant because the document requires two inmates to agree they are not enemies, and in Plaintiff's case the information about the threat to Plaintiff's safety was from an anonymous source.

///

---

[2] Motion, Doc. 92 at p. 4 of 18, ¶(i).

5

**(2)   Emi Tavanuu, CDCR# Unknown**[3]

Emi Tavanuu ("Tavanuu") is Plaintiff's friend and relative who was also in custody at SATF in Facility C, but in another building. Tavanuu can testify that he told defendant Wan that the information about Plaintiff being in danger was false, statements that should have been documented during the investigation.

Defendants argue that it is irrelevant for an inmate to testify that Plaintiff was not in danger, because the question is whether or not there was a threat to Plaintiff's safety that needed to be investigated.

**(3)   Vikram Sood, CDCR# P-80343**[4]

Vikram Sood ("Sood") was Plaintiff's neighbor at SATF in Bldg 2 C-section for a time. Sood can testify that he told defendant Wan that the information about Plaintiff being in danger was false, statements that should have been documented during the investigation.

Defendants argue that it is irrelevant for an inmate to testify that Plaintiff was not in danger, because the question is whether or not there was a threat to Plaintiff's safety that needed to be investigated.

**(4)   Michael Ta, CDCR# T-05240**[5]

Michael Ta ("Ta") was Plaintiff's cell mate for several months. Ta can testify that he told defendant Wan that the information about Plaintiff being in danger was false, statements that should have been documented during the investigation.

Defendants argue that it is irrelevant for an inmate to testify that Plaintiff was not in danger, because the question is whether or not there was a threat to Plaintiff's safety that needed to be investigated.

///

///

---

[3] Id. at p. 5 of 18, ¶(ii).

[4] Id. at p. 6 of 18, ¶(iii).

[5] Id. at p. 7 of 18, ¶(iv).

**(5)     Thailee Nguon, CDCR# T-99924**[6]

Thailee Nguon ("Nguon") was Plaintiff's cell mate for the months just before Plaintiff was taken to Ad-Seg. Nguon can testify that he told defendant Wan that the information about Plaintiff being in danger was false, statements that should have been documented during the investigation.

Defendants argue that it is irrelevant for an inmate to testify that Plaintiff was not in danger, because the question is whether or not there was a threat to Plaintiff's safety that needed to be investigated.

**(6) & (7)     Carlos Sosa (CDCR# J-06662) & Ludrate Burton (CDCR# J-96480)**[7]

Carlos Sosa ("Sosa") and Ludrate Burton ("Burton") were both housed at SATF in Facility C, Building 4. Sosa and Burton can testify about the content of Plaintiff's administrative complaint about the assault of an officer on an inmate. Plaintiff claims their testimony will correlate with a confidential file Wan showed Plaintiff, impeaching any claim by Wan that no confidential file exists.

Defendants argue that neither Sosa nor Burton has any relevant evidence, because they did not witness defendant Wan showing Plaintiff a confidential file and therefore, they do not have any direct knowledge that Wan showed a confidential file to Plaintiff. Defendants also argue that Plaintiff and his witnesses could not know which of Plaintiff's complaints about the alleged assault triggered Gallagher's investigation, because Plaintiff acknowledges that he first submitted his complaint to Wan before sending it to the Ombudsman.

**(8) & (9)     Arvizu (CDCR# J-93187) & Bell (CDCR# P-29220)**[8]

Arvizu and Bell were Plaintiff's co-workers on the Mens Advisory Council (MAC). They can testify about the MAC and how it works. They can corroborate Plaintiff's claim that he met with defendant Wan twice on the day he was placed in Ad-Seg. They can testify that they told defendant Wan that the information about Plaintiff being in danger was false, statements that should have been documented during the investigation. They know about the incident on May 3, 2005 when defendant

---

[6] Id. at p. 7 of 18, ¶(v).

[7] Id. at p. 8 of 18, ¶(vi).

[8] Id. at p. 9 of 18, ¶(vii).

7

Wan harassed Plaintiff after Plaintiff filed the complaint about Officer Torres. They can also confirm information about the MAC Executive Body's meeting with Wan, Gallagher and Sergeant Padilla during which Wan verbally abused Plaintiff about his jailhouse lawyer activities and told him "it will not happen anymore," just before Plaintiff was taken to Ad-Seg.

Defendants argue that it is irrelevant for an inmate to testify that Plaintiff was not in danger, because the question is whether or not there was a threat to Plaintiff's safety that needed to be investigated.

### (10) Jesus Rodriguez (CDCR# Unknown)[9]

Jesus Rodriguez ("Rodriguez") can testify about defendant Wan's character as a corrupt individual. Plaintiff claims that Wan said Rodriguez was a sexual predator and asked Plaintiff to take Rodriguez as a cell mate and assault him, as a favor to Wan.

Defendants argue that this testimony would be inadmissible character evidence. Moreover, Defendants maintain that there is a security risk in allowing Plaintiff to correspond with Rodriguez.

### (11) P. Ly (CDCR# J-19345)[10]

Plaintiff claims that prison officials told Plaintiff that P. Ly ("Ly") was the informant who told prison officials Plaintiff was in danger. Ly can testify that he was not the informant.

Defendants argue that Ly's testimony is not relevant, because Ly can only testify that he never provided staff with any information. Moreover, Defendants maintain there is a security risk in allowing Plaintiff to correspond with an inmate he suspects is a confidential informant.

### (12) Vincent Harris (CDCR# C-32773)[11]

At one point, Vincent Harris ("Harris") was Plaintiff's neighbor in Cell #226 while Plaintiff was in Cell #225. Harris, an inmate of African descent, can refute claims that Plaintiff's life was in danger due to his association with inmates of African descent. Harris can testify that Plaintiff is well-known as an active inmate advocate, litigator, jailhouse lawyer, and member of the MAC.

---

[9] Id. at p. 11 of 18, ¶(viii).

[10] Id. at p. 12 of 18, ¶(ix).

[11] Id. at p. 13 of 18, ¶(x).

8

Defendants argue that it is irrelevant whether or not Plaintiff actually associated with Black inmates or with inmates in his own racial group, because the question is whether there was a credible threat to Plaintiff's safety if he remained in the general population. Defendants contend that evidence of Plaintiff's actual associations is irrelevant.

**(13), (14), & (15)   Mao Rin (CDCR# V-05023), Tran Nguyen (CDCR# Unknown), & Chinneruth Chek (CDCR# Unknown)**[12]

Mao Rin ("Rin"), Tran Nguyen ("Nguyen"), and Chinneruth Chek ("Chek") all have first hand knowledge that Plaintiff associated with members of his own Pacific Islander/Asian ethnic group and not with inmates of African descent, refuting claims by Defendants that Plaintiff was in danger because he associated with inmates of African descent.

Defendants argue that it is irrelevant whether or not Plaintiff actually associated with Black inmates or with inmates in his own racial group, because the question is whether there was a credible threat to Plaintiff's safety if he remained in the general population. Defendants contend that evidence of Plaintiff's actual associations is irrelevant.

**IV.   DISCUSSION**

As stated above, the Court has required Plaintiff to make a showing with respect to each inmate witness that the witnesses possess relevant knowledge. "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Personal knowledge" means knowledge of a fact perceived by the senses, by one who has had an opportunity to observe, and must have actually observed the fact. Fed. R. Evid. 602. Personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception. Id.

Plaintiff's motion for court assistance must be denied because he has not provided evidence that he completed the process to obtain written authorization from the appropriate prison officials. Cal. Code Regs., tit. 15 § 3139 (2010). Because the Court does not have jurisdiction in this action

---

[12] Id. at p. 13 of 18, ¶(xi).

over anyone other than Plaintiff and Defendants, the Court can only make a request to prison officials and cannot order them to allow Plaintiff to correspond with his witnesses. E.g., City of Los Angeles, 461 U.S. at 102; Valley Forge Christian Coll., 454 U.S. at 471; Jones, 444 F.3d at 1126. Such a request shall not be made by the Court without assurances that Plaintiff has followed procedures and used the available resources at the prison to obtain written authorization after consideration by prison officials of safety, security, and procedural priorities. The Court recognizes that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (*quoting* Bell v. Wolfish, 441 U.S. 520, 547 (1970). Plaintiff has submitted evidence of correspondence he sent to his assigned counselor and the Warden in January and February 2010, and Plaintiff claims he received no replies. Defendants have provided evidence that Plaintiff's counselor received no such correspondence. In any event, if Plaintiff received no responses to his requests, he had other remedies available at the prison level before bringing a motion to the Court. Plaintiff has not submitted any evidence that he spoke to his counselor when he had the opportunity, or that he filed an administrative complaint grieving the lack of response to his correspondence.

Even if Plaintiff had completed the process available at the prison to request authorization, Plaintiff has not made a showing that all of the prospective witnesses possess relevant knowledge. Plaintiff claims that Tavanuu, Sood, Ta, Nguon, Arvizu, Bell, Rin, Nguyen, and Chek can testify that Plaintiff was not in danger, because he did not have enemies and he did not associate with inmates of African descent. However, it is not relevant whether Plaintiff was actually in danger, because the issue is whether Defendants had reason to believe that Plaintiff was in danger. Plaintiff claims that Torres has first hand knowledge that officials allowed Plaintiff to have a cell mate in Ad-Seg, which Plaintiff sees as evidence that was he not in danger, but the fact that Plaintiff could be safely celled with another inmate in Ad-Seg does not tend to prove that he was not in danger if placed in the general population. Plaintiff also claims that Torres can testify that Plaintiff was not allowed to sign a document he terms a "marriage chrono," which would have allowed Plaintiff to return to the general population, but Defendants argue that the type of document Plaintiff refers to was not an

option for Plaintiff because of the role of the confidential informant. Ly's testimony that he never provided staff members with any information about Plaintiff is irrelevant to whether Defendants had any reason to believe Plaintiff was in danger, particularly since Defendants contend the informant's note was unsigned. Nor has Plaintiff shown that inmate Rodriguez has any knowledge that is relevant to Plaintiff's claims and admissible. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). Moreover, Plaintiff has not provided CDC numbers to identify some of the witnesses. The Court shall not make any request for Plaintiff to correspond with unidentified inmate witnesses.

Plaintiff has demonstrated that three of the witnesses – Torres, Arvizu, and Bell – may have relevant knowledge. Plaintiff claims that Torres has knowledge that inmates in Plaintiff's circumstances are ordinarily given documentation of informants' notes about them, whereas Plaintiff was not given such documentation. Defendants have not argued that this fact is not relevant. The Court finds this fact may be relevant to prove that Defendants did not have any note from a confidential informant and thus no valid reason to retain Plaintiff in Ad-Seg. With regard to witnesses Arvizu and Bell, if they possess "personal knowledge" that defendant Wan's harassed Plaintiff for filing the complaint or for Plaintiff's other jailhouse lawyer activities, such information may be relevant to Plaintiff's retaliation claim.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that Plaintiff has made the requisite showing that three of his prospective inmate witnesses – Torres, Arvizu, and Bell – have knowledge of facts that may be relevant to Plaintiff's claims. However, Plaintiff has not completed the process under § 3139 to obtain written authorization from the appropriate prison officials. Therefore, Plaintiff's motion for a court order assisting facilitation of communication with witnesses must be denied. In light of the fact that Plaintiff has had two opportunities to bring this motion, and the discovery deadline in this action expired on September 17, 2010, Plaintiff's motion shall be denied with prejudice. Plaintiff is not foreclosed by the Court from pursuing his request for authorization at the prison level.

///

1 | In accordance with the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for a court order assisting facilitation of communication with inmate witnesses, filed March 1, 2010, is DENIED, with prejudice; and

2. Discovery in this action is CLOSED.


IT IS SO ORDERED.

Dated:   **January 13, 2011**            /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE